DAVIS, Judge:
U.S. Army veteran Michael A. Hudgens appeals through counsel a December 26, 2012, decision of the Board of Veterans Appeals (Board) that, in part, (1) denied a disability rating greater than 10% for degenerative joint disease of the right knee with accompanying limitation of extension prior to November 25, 2009; (2) denied a disability rating greater than 10% for instability of the right knee prior to November 22, 2008; and (3) upheld the reduction of Mr. Hudgens’s 10% disability rating for right knee instability from November 22, 2008, to November 24, 2009.[1] On appeal, Mr. Hudgens argues, among other things, that the Board erred in concluding that 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5055 does not apply to partial knee replacements. A panel decision is appropriate as this is an issue of first impression. See Frankel v. Derwinski, 1 Vet.App. 23, 25-26 (1990). For the reasons stated below, the decision of the Board will be in part reversed and in part set aside and the matters remanded for further adjudication.
I. BACKGROUND
Mr. Hudgens served in the U.S. Army from August 1977 to August 1980. He injured his right knee in service. In 2003, he underwent a unicompartmental right knee arthroplasty, or partial knee replacement. In 2006, Mr. Hudgens applied for disability compensation for his knee. The regional office (RO) awarded him a 10% disability rating for degenerative joint disease, claimed as right knee injury. In 2007, the RO awarded another 10% rating, *560 this time based on knee instability. In 2009, the RO reduced the rating for right knee instability from 10% to a noncom-pensable rating, effective November 22, 2008.
Before the Board, Mr. Hudgens argued that he should be rated by analogy under DC 5055 (“Knee replacement (prothesis)”). The Board declined to do so because it determined that DC 5055 applies only to “the total prosthetic replacement of the knee joint,” and not to partial knee replacements such as Mr. Hudgens’s. The Board also upheld the RO’s reduction of Mr. Hudgens’s rating for right knee instability from November 22, 2008, to November 24, 2009.
II. THE PARTIES’ ARGUMENTS
Mr. Hudgens raises three arguments on appeal. First, he argues that the Board erred in concluding that DC 5055 applies only to total knee replacements where, by its plain language, it applies to all knee replacements. Should the Court find the regulatory language ambiguous, Mr. Hud-gens argues that the Court should resolve interpretive doubt in favor of the veteran. If the Court should reach the issue of the Secretary’s interpretation of its regulation, Mr. Hudgens urges the Court to consider that 11 Board decisions have awarded benefits under DC 5055 based on partial knee replacements, while only 3 Board decisions (including the one here on appeal) have denied benefits on the basis that DC 5055 applies only to total knee replacements.
The Secretary responds that the plain language of DC 5055 shows that it applies to the total, compound knee joint. If the Court should find the language ambiguous, the Secretary argues that the Court must defer to his regulatory interpretation as expressed on appeal and in a 2009 VA Compensation and Pension Service Bulletin, and that the Court should not consider Board decisions as evidence of the Secretary’s regulatory interpretation.
Second, Mr. Hudgens argues that the Board erred in upholding the reduction of his 10% rating for right knee instability because the record contains evidence of instability that was not discussed by the Board. The Secretary concedes that the Board erred in stating that there was no evidence of instability where the record includes a June 2009 medical note stating that Mr. Hudgens’s knee dislocated on extension and a November 2009 medical note stating that his knee buckled and gave out. However, the Secretary argues that remand, rather than reversal, is warranted.
Third, Mr. Hudgens argues that the Board erred in not addressing whether a higher disability rating was warranted under DC 5258 (“Cartilage, semilunar, dislocated, with frequent episodes of ‘locking,’ pain, and effusion into the joint.”), where the issue was raised by the evidence. The Secretary argues that DC 5258 is not applicable because there is no evidence of dislocated cartilage. However, the Secretary concedes that remand is warranted for the Board to discuss whether a higher disability rating was warranted under DC 5259 (“Cartilage, semilunar, removal of, symptomatic”), which applies to the removal of cartilage from the knee.
III. ANALYSIS
A. Interpretation of DC 5055

1. Partial knee replacements are not covered by DC 5055.

The plain language of DC 5055[2] does not apply to partial knee replace *561 ments. Regulatory interpretation begins with the plain meaning of the words used. Brown v. Gardner, 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); see also Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (the canons of statutory interpretation apply to interpreting regulations). DC 5055 refers to “[p]rosthetic replacement of knee joint.” “Knee joint” is defined as “the compound joint at the knee, formed between the articular surface of the patella, the condyles and patellar surface of the femur, and the superior articular surface of the tibia.” Dorland’s Illustrated Medical Dictionary 159 (32d ed. 2012); see Mallard v. U.S. Dist. Court, 490 U.S. 296, 301, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (using dictionary to assist in review of plain meaning of statute). The regulation therefore applies to prosthetic replacements of the compound knee joint, which includes all three compartments of the knee. Nothing in the plain language of the regulation indicates that it applies to replacements of less than a complete knee joint, such as the unicompartmental knee prosthesis that Mr. Hudgens has.
The conclusion that the regulation does not apply to partial knee replacements also is consistent with the overall regulatory scheme, which “should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.” Roper v. Nicholson, 20 Vet.App. 173, 178 (2006) (quoting 2A N. Singer, Sutherland on Statutory Construction, § 46:06 (6th ed. 2000)); see United States v. Hartwell, 73 U.S. (6 Wall.) 385, 396, 18 L.Ed. 830 (1868) (courts should construe statutory language so as to harmonize with context and promote legislative policy). DC 5054, DC 5055’s neighbor in the regulatory subpart titled “Prosthetic Implants,” applies to hip replacements. In relevant part, DC 5054 mirrors the language of DC 5055, except that instead of stating “[p]rosthetic replacement of knee joint,” it states “[p]rosthetic replacement of the head of the femur or of the acetabulum.”[3] (emphasis added). The Secretary’s choice of this disjunctive regulatory language in DC 5054 shows that he knew how to provide benefits for a prosthesis replacing part of a joint, as opposed to the entire joint, when he intended to. Interpreting DC 5055’s “knee joint” language to include both total and partial knee joint protheses would render superfluous the Secretary’s language in DC 5054 specifically providing benefits to veterans with partial hip prostheses. Roper, supra; see also Bailey v. United States, 516 U.S. 137, 146, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (“We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.”).
The Court’s decision in Jones v. Shinseki, 26 Vet.App. 56 (2012), is instructive. In Jones, the Court considered whether “the Board committed legal error by considering the effects of medication on the appellant’s IBS [ (irritable bowel syndrome) ] when those effects were not explicitly contemplated by the rating criteria.” 26 Vet.App. at 61. The Court held that the Secretary’s “failure to include the effects of medication as a criterion to be considered under DC 7319 while including such effects as criteria under other DCs must therefore be read as a deliberate choice.” Id. at 62. Utilizing the cannons *562 of construction, the Court reasoned that “[t]he Secretary has demonstrated in other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability.” Id. Employing this reasoning to Mr. Hudgens’s case, DC 5055 applies only to total knee replacements, as the Secretary has demonstrated in other parts of § 4.71(a) that he is aware of how to include partial joint replacements as part of disability rating criteria in other parts of § 4.71(a). See Heino v. Shinseki, 683 F.3d 1372, 1379 (Fed.Cir.2012) (“It is well settled that ‘[wjhere Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion.’ ” (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))). Accordingly, the plain language of the regulation and its place in the overall regulatory scheme make clear that DC 5055 is intended to apply to total knee replacements.[4]
Generally, if the regulation’s language makes its meaning clear, “that is the end of the matter.” Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Because it is clear from the regulatory language that partial knee replacements are not included in DC 5055, the Court need not address the parties’ arguments regarding whether the Secretary’s currently offered regulatory interpretation represents his considered view on the matter, see Mason v. Shinseki 743 F.3d 1370 (Fed.Cir.2014), or whether the Court may rely on nonprecedential Board decisions when making this determination, but cf. Lynch v. Gober, 11 Vet.App. 22, 27 (1997) (“It is well established that [Board] decisions are of no prece-dential value before the [Board] or this Court.”); 38 C.F.R. § 20.1303 (2013) (providing that “previously issued Board decisions will be considered binding only with regard to the specific case decided”).
Indeed, although our dissenting colleague struggles mightily to do so, he cannot conjure ambiguity in DC 5055 when there simply is none. See Good Samaritan Hosp., supra; see also Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006) (noting that “a statute is ambiguous only when the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue”) (citing Bell Atl. Tel. Cos. v. FCC, 131 F.3d 1044, 1047 (D.C.Cir.1997) (ambiguity is a conclusion reached when the question presented is not answered “at the level of literal language”)). Moreover, though Mr. Hudgens and the dissent note that there are 11 Board decisions that rate partial knee replacements under DC 5055, assuming we can consider such decisions for their proffered purpose[5] — the majority of which the *563 Court notes do not appear in the record of proceedings before the Court, see generally Kyhn v. Shinseki, 716 F.3d 572, 578 (Fed.Cir.2013) (holding that this Court is prohibited from considering evidence that was not in the record before the Board and engaging in factfinding in the first instance) — it is “well established that the unchallenged historical practice of the Secretary is not evidence that the practice is correct.” Tropf, 20 Vet.App. at 321 n. 1 (citing Brown, 513 U.S. at 122, 115 S.Ct. 552) (“ ‘The length of regulations’ unscru-tinized and unscrutinizable existence’ [does] not alone ... enhance any claim to deference.” (quoting Gardner v. Brown, 5 F.3d 1456, 1463-64 (Fed.Cir.1993))); See also Fed. Express Corp. v. Holowecki, 552 U.S. 389, 399-400, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (holding that an agency’s interpretation expressed its considered view when the relevant interpretive statement had been published in an agency interpretive manual for several years, even though implementation of the interpretation had been “uneven”).[6]

2. Partial Knee Replacements Rated by Analogy

Although the Board did not err in determining that the plain language of DC 5055 applies to total knee prostheses, remand is nonetheless warranted for the Board to adequately address whether Mr. Hudgens’s partial knee replacement should be rated by analogy under DC 5055, which contemplates symptomatology including weakness, pain, and limitation of motion, or under another DC. When the Secretary’s regulations do not provide DCs for specific disorders, VA may evaluate those conditions under codes for similar or analogous disorders. Lendenmann v. Principi, 3 Vet.App. 345, 351 (1992) (citing 38 C.F.R. § 4.20). In determining whether an unlisted condition should be rated by analogy, the Board should address (1) whether the “functions affected” by the ailments are analogous; (2) whether the “anatomical localization” of the ailments is analogous; and (3) whether the “sympto-matology” of the ailments is analogous. Id.
In this case, the Board’s decision addresses none of the factors for rating analogous conditions, even though Mr. Hud-gens specifically asserted that his partial knee replacement should be rated by analogy under DC 5055. Record (R.) at 11 (“The Veteran argues that his November 2003 surgery was ‘analogous’ to total knee replacement, and that he is entitled to a 30 percent ‘minimum’ rating under ... [DC] 5055.”); see Schafrath v. Derwinski, 1 Vet.App. 589, 593 (1991) (Board must consider and discuss all applicable provisions of law and regulation where they are made “potentially applicable through the assertions *564 and issues raised in the record”). The Board’s failure to adequately address Mr. Hudgens’s analogy argument renders its statement of reasons or bases inadequate and warrants remand. Id.; see also Tucker v. West, 11 Vet.App. 369, 374 (1998) (remand is appropriate “where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate”); Allday v. Brown, 7 Vet.App. 517, 527 (1995) (Board’s statement “must be adequate to enable a claimant to understand the precise basis for the Board’s decision, as well as to facilitate review in this Court”).
B. Rating Reduction
As the parties agree, the Board erred in upholding the reduction of Mr. Hudgens’s 10% rating for right knee instability. The Board found that the reduction was warranted because there was no evidence of knee instability, but the record includes evidence that, during the relevant period, Mr. Hudgens’s knees buckled and gave out (R. at 526), and dislocated on extension (R. at 700). The Board failed to address this favorable evidence. Gutierrez v. Principi, 19 Vet.App. 1, 9 (2004) (Board’s reasoning flawed when it fails to discuss adequately evidence in support of claim). Accordingly, its statement of reasons or bases is inadequate, and its specific finding of no evidence of knee instability is clearly erroneous. Id.; see also Butts v. Brown, 5 Vet.App. 532, 534 (1993) (en banc) (Court reviews findings of fact under the “clearly erroneous” standard of review); Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990) (“ A finding is “clearly erroneous” when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))). Although the Secretary argues for remand, reversal is the proper remedy as “VA’s failure to observe applicable law and consider all relevant evidence renders reduction or severance decisions ... ‘void ab initio.’ ” King v. Shinseki, 26 Vet.App. 484, 492 (2014); Schafrath, 1 Vet.App. at 596 (holding that the Board provided inadequate reasons or bases for its decision to uphold the reduction of the appellant’s rating, and reversing the Board decision and remanding the case “with instructions that [the] appellant’s disability rating ... be reinstated” because it was “a reduction case, not an increase case”). Accordingly the Board’s decision to uphold the rating reduction will be reversed and this matter remanded with orders to reinstate the previous rating. Id.
C. Increased Rating
Mr. Hudgens argues that the Board erred in not addressing whether a higher disability rating was warranted under DC 5258 (“Cartilage, semilunar, dislocated, with frequent episodes of ‘locking,’ pain, and effusion into the joint”), when the issue was raised by evidence of knee dislocation, swelling, and pain. The Secretary disagrees that the Board should have applied DC 5258 because there is no evidence of dislocated cartilage. However, as Secretary concedes, remand is warranted for the Board to discuss whether a higher disability rating was warranted under DC 5259 (“Cartilage, semilunar, removal of, symptomatic”), which applies when there are symptoms associated with the removal of semilunar cartilage. See Schafrath, 1 Vet.App. at 593 (Board must discuss all regulations reasonably raised by the evidence). Although the Board mentioned DC 5259, it failed to address the evidence of right knee dislocation, swelling, and pain or explain why they are not evidence of “cartilage, semilunar, removal of, sympto *565 matic.” DC 5259. The Board’s failure to do so renders its statement of reasons or bases inadequate and warrants remand. Id. On remand, Mr. Hudgens may raise, and the Board must address, his argument regarding the applicability of DC 5258, as well as any other argument or evidence offered in support of the remanded matter. See Kay v. Principi, 16 Vet.App. 529, 534 (2002).
IY. CONCLUSION
Upon consideration of the foregoing, that part of the Board’s December 26, 2012, decision that (1) denied a disability rating greater than 10% for degenerative joint disease of the right knee with accompanying limitation of extension prior to November 25, 2009, and (2) denied a disability rating greater than 10% for instability of the right knee prior to November 22, 2008 is SET ASIDE, and the matter REMANDED for further adjudication. That part of the Board’s decision upholding the reduction of Mr. Hudgens’s 10% disability rating for right knee instability from November 22, 2008, to November 24, 2009, is REVERSED, and the matter is REMANDED for the Board to reinstate the Mr. Hudgens’s 10% rating effective November 22, 2008.

. The Court notes that it lacks jurisdiction over (1) the claims of entitlement to service connection for nerve damage of the cervical spine and increased evaluations for degenerative joint disease and instability of the right knee from November 25, 2009, and (2) the issue of the appellant's entitlement to a total disability rating based upon individual unem-ployability, because these matters were remanded by the Board. See 38 U.S.C. §§ 7252(a), 7266(a); Breeden v. Principi, 17 Vet.App. 475, 478 (2004) (a Board remand "does not represent a final decision over which this Court has jurisdiction”).

. In relevant part, DC 5055 states:
"5055 Knee replacement (prosthesis).
Prosthetic replacement of knee joint:
*561 Minimum rating_30%.”

. The hip joint is "the joint formed between the head of the femur and the acetabulum of the hip bone.” Dorland's Illustrated Medical Dictionary 159 (32nd ed. 2012).

. This interpretation is not contrary to the Supreme Court’s mandate that "interpretive doubt is to be resolved in the veteran’s favor.” See Brown v. Gardner, 513 U.S. 115, 117-19, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Rather, the Court holds that, here, there is simply no ambiguity to resolve.

. Contrary to the dissent’s suggestions otherwise, the Board is not the body tasked with interpreting regulations on the Secretary's behalf. Rather, Congress was unequivocally clear that the Board is to be bound by "regulations by the Department, instructions of the Secretary, and the precedential opinions of the chief legal officer of the Department.” See 38 U.S.C. § 7104(c); see also 38 C.F.R. § 20.1303 (providing that "previously issued Board decisions will be considered binding only with regard to the specific case decided.”); see also 57 Fed.Reg. 4088, 4103 (Feb. *563 3, 1992) (noting the ex parte nature of Board proceedings and explaining that "[questions of fairness would arise by, in effect, making a [Board] decision precedential when the Department has no opportunity to present and defend its position in the proceeding. Further, VA may not appeal a [Board] decision to the [Court].... [U]niformity will be achieved on important questions through precedent decisions of the United States Court of Veterans Appeals."). Stated otherwise, the Secretary is tasked with establishing VA policy; the Board is tasked with following such established policy. See 38 C.F.R. § 20.1303 (providing that although "prior decisions in other appeals may be considered in a case,” the Board is not bound by these decisions and must still decide a case "on the basis of the individual facts of the case in light of applicable procedure and substantive law”).

. In placing substantial weight on the fact that the Secretary has not taken any action with respect to these 11 Board decisions, the dissent seems to do no more than invite the Secretary to initiate clear and unmistakable error proceedings in cases not currently before the Court. We, however, extend no such invitation.