# United States Court of Appeals
# for the Federal Circuit

_____

**MICHAEL A. HUDGENS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

_____

2015-7030

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-0370, Chief Judge Bruce E. Kasold, Judge Alan G. Lance, Sr., Judge Robert N. Davis.

_____

Decided: May 18, 2016

_____

THOMAS EDWARD ANDREWS III, Andrews Law Office LLC, Columbia, SC, argued for claimant-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR., COURTNEY D. ENLOW; DAVID J. BARRANS, AMANDA BLACKMON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before O'MALLEY, PLAGER, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Mr. Hudgens appeals from the judgment of the Court of Appeals for Veterans Claims ("Veterans Court"). That court (1) held that Mr. Hudgens is not entitled to compensation for his prosthetic knee replacement under 38 C.F.R. § 4.71a, Diagnostic Code 5055 ("DC 5055"); (2) vacated and remanded the decision of the Board of Veterans' Appeals ("Board") denying Mr. Hudgens a disability rating of greater than 10 percent for degenerative joint disease in the right knee; (3) vacated and remanded the decision of the Board denying entitlement to a compensable disability rating for instability in the right knee for a prior time period; and (4) remanded to the Board for a determination of whether Mr. Hudgens's partial knee replacement can be rated by analogy to DC 5055. *Hudgens v. Gibson*, 26 Vet. App. 558 (2014). The issue before us on appeal is whether Mr. Hudgens is entitled to compensation for his prosthetic knee replacement under DC 5055. For the reasons below, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

Mr. Hudgens injured his right knee while serving on active duty in the U.S. Army. Joint Appendix ("JA") 2. In 2003, Mr. Hudgens had partial knee replacement surgery on his right knee. *Id.* On August 16, 2006, Mr. Hudgens sought benefits with the Department of Veterans Affairs ("VA" or "Secretary") for his service-connected knee injury. JA 105.

### A. Regional Office Decisions

Mr. Hudgens filed claims for (1) degenerative joint disease in the right knee; (2) instability in the right knee;

and later (3) an evaluation for his prosthetic knee replacement. On December 29, 2006, the VA Regional Office ("RO") granted Mr. Hudgens's claim for benefits based on his degenerative joint disease of the right knee and assigned a 10 percent evaluation. JA 105. On September 28, 2007, Mr. Hudgens filed a claim for an increased evaluation for instability in his right knee. JA 260. On November 21, 2007, the RO assigned an additional 10 percent evaluation for Mr. Hudgens's instability in his right knee. JA 260, 263.

On February 3, 2009, after receiving the results of Mr. Hudgens's then-recent VA orthopedic exam, the RO reduced the rating for Mr. Hudgens's right knee instability from 10 to 0 percent. JA 267. The RO still continued the previously assigned 10 percent evaluation for degenerative joint disease. JA 266. After filing a second claim for increased evaluation of his knee instability and having it denied by the RO on April 22, 2009, Mr. Hudgens filed a Notice of Disagreement. JA 275. Mr. Hudgens underwent another VA orthopedic exam, but the RO again found that the 0 percent evaluation for right knee instability was warranted. JA 288.

On March 16, 2010, Mr. Hudgens filed a second Notice of Disagreement, this time arguing that he should be awarded 100 percent evaluation for his prosthetic knee replacement under DC 5055. Under the heading "Prosthetic Implants" DC 5055 states:

5055 Knee replacement (prosthesis).

Prosthetic replacement of knee joint:

> For 1 year following implantation of prosthesis…..................................................100

> With chronic residuals consisting of severe painful motion or weakness in the affected extremity…………...................................60

> With intermediate degrees of residual weakness, pain or limitation of motion rate by analogy to diagnostic codes 5256, 5261, or 5262.
>
> Minimum rating……………………….30

On March 31, 2010, the RO denied the increase in evaluation, finding that DC 5055 applied only to total knee replacements, not partial knee replacements. JA 305.

## B. Board Decision

Mr. Hudgens appealed the RO's rating decisions to the Board. JA 70. On December 26, 2012, the Board denied Mr. Hudgens: (1) a disability rating of greater than 10 percent for degenerative joint disease of the right knee; (2) a disability rating of greater than 10 percent for instability in the right knee; and (3) entitlement to a compensable disability rating for instability in the right knee for the time period between the two VA orthopedic exams. JA 79. The Board additionally concluded that DC 5055 does not apply to Mr. Hudgens because he "underwent only a 'partial' knee replacement, and not the total prosthetic replacement of the knee joint contemplated [by DC 5055]." JA 77. The Board did not address whether DC 5055 can be applied to Mr. Hudgens by analogy. *Id.*

## C. Veterans Court Decision

On January 30, 2013, Mr. Hudgens appealed the Board's decision to the Veterans Court. JA 16. Mr. Hudgens argued that the Board erred in finding that DC 5055 does not apply to partial knee replacements. *Hudgens*, 26 Vet. App. at 560. The Veterans Court disagreed. *Id.* at 565. In rendering its decision, the Veterans Court considered the plain meaning of the term "knee joint" in DC 5055. *Id.* at 561. After looking to a medical dictionary for guidance, the Veterans Court concluded that DC 5055 is unambiguous and applies to the prosthetic replacement of the whole knee joint, which must include all

three components of the knee. *Id.* The Veterans Court also concluded that such a definition was "consistent with the overall statutory scheme." *Id.* In particular, the Veterans Court looked to a related regulation, DC 5054, which addresses prosthetic hip replacements. *Hudgens*, 26 Vet. App. at 561. The Veterans Court reasoned that, since DC 5054 explicitly includes language relating to a partial hip replacement, the VA Secretary "knew how to provide benefits for a prosthesis replacing part of a joint, as opposed to the entire joint, when he intended to." *Id.* Finally, because the Veterans Court found DC 5055 to be unambiguous, it was not swayed by the fact that the majority of prior Board decisions were inconsistent with the Veterans Court's current interpretation of this regulation. *Id.* at 562–63.

After disposing of this interpretive issue, the Veterans Court remanded several of Mr. Hudgens's other claims to the Board. *Id.* at 565. The Veterans Court asked the Board to address whether Mr. Hudgens's partial knee replacement can be rated by analogy to DC 5055.[1] *Id.* at 564. The Veterans Court also vacated the Board's decision on the issues of right knee instability and degenerative joint disease, remanding these matters to the Board for further adjudication. *Hudgens*, 26 Vet. App. at 565. Specifically, the Veterans Court found that the Board "failed to address the evidence of right knee dislocation, swelling, and pain or explain why they are not evidence of 'cartilage, semilunar, removal of, symptomatic.'" *Id.* at 564–65 (citing DC 5259).

Chief Judge Kasold dissented with respect to the majority's holding that DC 5055 does not apply to partial

---

[1] 38 C.F.R. § 4.20 allows the VA to evaluate specific disorders not listed in the regulations under codes for similar disorders. *Hudgens*, 26 Vet. App. at 563.

knee replacements, finding the regulation to be ambiguous. *Id.* (Kasold, C.J., dissenting). In particular, Chief Judge Kasold pointed out that the majority of Board decisions to address DC 5055 had found that the regulation *does* apply to partial knee replacements. *Id.* In addition, Chief Judge Kasold argued that, in view of the inconsistent interpretation of the regulation by the agency, the Secretary's current interpretation does not warrant deference. *Id.* at 567. Instead, Chief Judge Kasold insisted that the ambiguity "be interpreted in the light most favorable to the veteran." *Id.* (citing, *inter alia*, *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

On July 17, 2014, Mr. Hudgens filed a motion for reconsideration regarding the Veterans Court's interpretation of DC 5055. *Hudgens v. McDonald*, No. 13-0370, 2014 U.S. App. Vet. Claims LEXIS 1769, at *1 (Vet. App. Oct. 20, 2014). On October 20, 2014, the Veterans Court denied the motion, with Chief Judge Kasold again dissenting. *Id.* at *3. Mr. Hudgens timely appealed to this court.

### D. New Agency Interpretation of DC 5055

On July 16, 2015, twelve days before the Secretary's final brief was due with this court, the VA published a final informal rule relevant to this litigation. Appellant Reply Br. at 1 (citing *Agency Interpretation of Prosthetic Replacement of Joint*, 80 Fed. Reg. 42,040 (Dep't of Veterans Affairs July 16, 2015) [hereinafter *Agency Interpretation*]). The regulation explains that "[i]n view of the . . . VA's longstanding interpretation, VA is amending its regulations to clarify that the language of § 4.71a, Prosthetic Implants, which refers to replacement of the named joint, refers to replacement of the joint as a whole, except where it is otherwise stated under DC 5054." *Agency Interpretation* at 42,040–41.

## STANDARD OF REVIEW

"We have the authority to decide all relevant questions of law and can set aside a regulation or an interpretation of a regulation relied upon by the Court of Appeals for Veterans Claims when we find it to be arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or without observance of procedure required by law." *Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999); *see* 38 U.S.C. § 7292(d)(1). "We review statutory and regulatory interpretations of the Veterans Court *de novo*." *Johnson v. McDonald*, 762 F.3d 1362, 1364 (Fed. Cir. 2014); *accord DeLaRosa v. Peake*, 515 F.3d 1319, 1321 (Fed. Cir. 2008).

## DISCUSSION

Mr. Hudgens asks that we reverse the Veterans Court's judgment that an evaluation for DC 5055 is limited to instances in which a claimant undergoes a full knee replacement. The VA argues that we do not have jurisdiction to hear Mr. Hudgens's appeal, and that, if we do, the Veterans Court's judgment should be affirmed. We first address the parties' jurisdictional dispute before turning to the merits of Mr. Hudgens's appeal.

### A. Jurisdiction

Mr. Hudgens argues that, although the Veterans Court's remand order means that its decision is not final as to all issues presented, this court has jurisdiction because this appeal satisfies the *Williams* standard for finality on discrete and separable claims. *See Williams v. Principi*, 275 F.3d 1361, 1364 (Fed. Cir. 2002).

This court's review of Veterans Court decisions is governed by 38 U.S.C. § 7292. Although the statute does not explicitly impose a finality requirement, this court has

generally declined on prudential grounds to review deci-
sions of the Veterans Court where any issues have yet to
be decided. *Joyce v. Nicholson*, 443 F.3d 845, 849 (Fed.
Cir. 2006). *Williams* established an exception to this rule:

> [W]e will depart from the strict rule of finality
> when the Court of Appeals for Veterans Claims
> has remanded for further proceedings only if three
> conditions are satisfied: (1) there must have been
> a clear and final decision of a legal issue that (a) is
> separate from the remand proceedings, (b) will di-
> rectly govern the remand proceedings or, (c) if re-
> versed by this court, would render the remand
> proceedings unnecessary; (2) the resolution of the
> legal issues must adversely affect the party seek-
> ing review; and, (3) there must be a substantial
> risk that the decision would not survive a remand,
> *i.e.,* that the remand proceeding may moot the is-
> sue.

275 F.3d at 1364 (footnotes omitted).

There is no question that Mr. Hudgens meets factors
(1)(a) and (2) of the *Williams* test. The Veterans Court's
interpretation of DC 5055 was a clear and final decision
that is separable from the remanded issues, which relate
to separate claims for relief. And, Mr. Hudgens will be
harmed because the Board on remand will not address his
rating under DC 5055, and "rather than receiving the
automatic minimum rating under DC 5055 for having a
knee replacement, he [will have] to seek a rating under
Section 4.20 [rating by analogy] and meet the require-
ments called for by it." Appellant Reply Br. at 13. The
parties dispute, however, whether Mr. Hudgens meets the
third *Williams* factor.

Mr. Hudgens argues that his case meets the third fac-
tor of *Williams*, asserting that "the applicability of Diag-
nostic Code 5055 will not be addressed in the remand,"
and there is a substantial risk that the resolution of the

remaining issues will moot the currently-appealed issue. Appellant Br. at 10. The VA disagrees, contending that this case is akin to *Myore*, *Donnellan*, and *Joyce*, where this court held that it lacked jurisdiction over the appealed remand orders of the Veterans Court. *See Myore v. Principi*, 323 F.3d 1347 (Fed. Cir. 2003); *Donnellan v. Shinseki*, 676 F.3d 1089 (Fed. Cir. 2012); *Joyce v. Nicholson*, 443 F.3d 845, 850 (Fed. Cir. 2006). We briefly review these cases.

In *Myore*, a widow of a deceased veteran claimed veterans benefits under 38 U.S.C. § 1310(a), which provides dependency benefits to spouses of deceased veterans. 323 F.3d at 1348. The Board found that Mrs. Myore was not entitled to benefits because of her husband's willful misconduct in causing his own death. *Id.* at 1349. On appeal, she urged the Veterans Court to reverse the Board's decision, proposing a different interpretation of 38 U.S.C. § 1310(a)—that the statute does not bar recovery due to willful misconduct. *Id.* at 1349–50. The Veterans Court rejected Mrs. Myore's interpretation of the statute but remanded the case because the Board needed to decide if it had properly assisted the claimant in defeating the finding of willful misconduct. *Id.* Mrs. Myore appealed to this court, contending that she met the *Williams* exception because the Veterans Court misinterpreted the statute at issue and, if that finding were reversed, Mrs. Myore would be entitled to benefits. *Myore*, 323 F.3d at 1352. This court rejected her argument, holding that "[t]he mere fact that the Veterans Court as part of a remand decision may have made an error of law that will govern the remand proceeding . . . does not render that decision final." *Id.* Although the statutory interpretation issue would not be addressed again on remand in *Myore*, we did not find that the issue "evade[d] further review" because "[i]f Myore loses before the Board [on remand], and [the statute] is applied against her, and the Board's decision is affirmed by the Veterans Court, then Myore

may seek review of that court's interpretation of [the statute] on what will then be a final judgment." *Id.*

Likewise, in *Donnellan*, the Veterans Court remanded the case to the Board after finding that Mr. Donnellan was not entitled to a statutory presumption of aggravation. 676 F.3d at 1091. Mr. Donnellan appealed to this court, arguing that this remand order was final because "he may be able to meet the burden imposed by the Veterans Court and prevail on his claim; if he does, the legal issue [of the statutory presumption] he seeks to present to this court will not reach this court in his case." *Id.* This court rejected Mr. Donellan's argument, holding that "[t]he risk that a decided issue will not survive a remand does not include the possibility that the appellant will prevail on remand and therefore will not need to take another appeal." *Id.* at 1092. In particular, we noted in *Donnellan* that the "test for whether [an] issue may evade review is whether, if the claimant loses on remand, the claimant will not be able to raise the issue on appeal from an adverse final judgment." *Id.* (citing *Myore*, 323 F.3d at 1352).

Finally, in *Joyce*, we clarified that there is a distinction between veterans cases in which a single claim is being adjudicated and cases in which multiple claims are being adjudicated. 443 F.3d at 850. In cases involving a single veteran's claim, if a claimant loses on remand and the Veterans Court upholds the Board, the claimant will be able to "raise *any* objections to the judgment that was entered [on appeal], whether the errors arose from the *original Court of Appeals for Veterans Claims decision* or the second and final decision." *Id.* (emphases added). On the other hand, if a veteran's case involves separate claims for relief, "under some circumstances review is available for a claim for which final judgment has been entered even if other, separate claims have been remanded." *Id.* at 850 (discussing *Elkins v. Gober,* 229 F.3d 1369, 1376 (Fed. Cir. 2000)). In particular, in *Elkins*, we held

that "[b]ecause . . . each 'particular claim for benefits' may be treated as distinct for jurisdictional purposes, a veteran's claims may be treated as separable on appeal." *Elkins*, 229 F.3d at 1376 (quoting *Maggitt v. West,* 202 F.3d 1370, 1376 (Fed. Cir. 2000)). We cautioned, however, that "we will not review final judgments on separable claims where other claims are still pending if our review would 'disrupt the orderly process of adjudication'—for example, where the appealed claim is 'inextricably intertwined' with the remanded claim." *Joyce*, 443 F.3d at 850.

Here, we conclude that Mr. Hudgens's case is distinguishable from those at issue in *Myore* and *Donnellan*, each of which involved appeals from remand orders in cases involving a single claim for veterans' benefits. Instead, Mr. Hudgens's case falls within the jurisdictional exception for separate remanded claims, as explained in *Joyce*. Here, the claims remanded by the Veterans Court are separate claims for right knee disability distinct from the non-remanded claim of whether Mr. Hudgens is entitled to an evaluation for prosthetic knee replacement under DC 5055. Mr. Hudgens's path to achieving a rating under DC 5055 is thus a separate claim that cannot be reviewed by the Board on remand. Nor does Mr. Hudgens's appeal fall within the category of cases in which a non-remanded claim is "inextricably intertwined" with a remanded claim such that "both claim compensation for the same disability." *Joyce*, 443 F.3d at 850. As Mr. Hudgens correctly notes, his "claim for a rating under DC 5055 was not [remanded]," and the Veterans Court's remand for a determination of whether Mr. Hudgens meets that regulation *by analogy* "is not the same" as remanding to determine whether he meets the rating *directly* under that specific regulation. Appellant Reply Br. at 12. Accordingly, we hold that we have jurisdiction to review whether Mr. Hudgens is entitled to an evaluation under DC 5055.

### B. Whether DC 5055 Covers
### Partial Knee Replacement

We now address whether the Veterans Court erred in holding that DC 5055 is limited to instances where a claimant has undergone a full knee replacement. The VA argues that the Veterans Court did not err in concluding that DC 5055 unambiguously applies only to full knee replacements, and if ambiguous, the Secretary's interpretation of DC 5055 is entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). Appellee Br. at 40. Mr. Hudgens argues that the Veterans Court's interpretation of DC 5055 must be reversed. He contends that the rule unambiguously *does* apply to all knee replacements, even partial ones, and that, under *Gardner* any "interpretive doubt is to be resolved in the veteran's favor." Appellant Br. at 45 (citing *Gardner*, 513 U.S. at 118). Mr. Hudgens argues that *Auer* deference is not warranted in this case and, thus, cannot displace the rule of *Gardner*.

While we are not prepared to say that DC 5055 unambiguously *includes* partial knee replacements, we agree with Mr. Hudgens that (1) DC 5055 does not unambiguously *exclude* such replacements; (2) the VA's interpretation of DC 5055 is not entitled to deference under *Auer*; and (3) *Gardner* compels the conclusion that the Veterans Court erred in its judgment that DC 5055 is limited to instances of full knee replacement. With respect to the first point, it is undisputed that the regulation does not expressly state that the only prosthetic implants covered are those for full knee replacements. While the Veterans Court in this case cited a dictionary for the proposition that the "knee joint" is generally considered to be made up of a number of component parts, there is nothing in the regulation that expressly states that all of those component parts must be replaced by a prosthesis before DC 5055 applies. And, the government does not seem to dispute Mr. Hudgens's contention that even total knee replacements rarely replace or alter all of

the components of the knee referenced in the Veterans Court's cited dictionary definition, such that the practical effect of reliance on that definition would exclude almost all knee replacements from the reach of DC 5055.[2]  It is notable, moreover, that 11 out of 14 of the Board's decisions regarding DC 5055 found that DC 5055 is applicable to partial knee replacements, largely because it does not expressly exclude that form of prosthetic implant.  Indeed the Veterans Court itself previously has held that DC 5055 applies to partial knee replacements because it does not unambiguously state the contrary. *Taylor v. Shinseki*, No. 10-2588, 2012 U.S. App. Vet. Claims LEXIS 1219 (June 18, 2012) (nonprecedential).  Where a majority of the decisions to consider this question have found that partial knee replacements are covered by DC 5055, it seems a stretch to conclude that the ambiguities those decision makers perceived can all be clarified by reference to one dictionary not cited in the regulation.[3]

Turning to the second question—whether *Auer* deference requires that we accept the Secretary's current

---

[2]  We are similarly unpersuaded by the Veterans Court's reference to DC 5054.  That the Secretary may have used different language when referring to hip replacements tells us very little in light of the anatomical difference between hips and knees.

[3]  Mr. Hudgens asserts that the number of Board decisions granting benefits under DC 5055 for partial knee replacements is even higher—17 out of 21 according to his count.  The precise number is not important; what is important is that it is undisputed that the vast majority of Board decisions considering the question have concluded either that DC 5055 unambiguously covers partial knee replacements, or at least that it does not unambiguously exclude them.

interpretation of DC 5055—we conclude it does not. Under *Auer*, an agency's interpretation of its own regulation controls, unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461. *Auer* itself explained, however, that in order for this deference to apply, the interpretation must "reflect the agency's fair and considered judgment on the matter in question." *Id.* at 462. In *Christopher v. Smithkline Beecham*, the Supreme Court further clarified that deference to an agency's interpretation is "unwarranted" when "the agency's interpretation conflicts with a prior [agency] interpretation, or when it appears that the interpretation is nothing more than a 'convenient litigating position,' or a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack.'" 132 S. Ct. 2156, 2166 (2012) (citations omitted).

First, we reject the VA's argument that "the Secretary has consistently interpreted DC 5055 as applying only to total knee replacements." VA Br. at 36. In advancing this argument, the VA cites to the Secretary's arguments in *Taylor v. Shinseki* and to the *Agency Interpretation*. VA Br. at 37. The Secretary asks that we disregard the numerous inconsistent rulings by the Board, stating that "they are not synonymous with the VA's position on an issue" and that "if the Secretary disagrees with a board decision, he is unable to assert this position because he cannot appeal [it]." VA Br. at 31. These arguments are unpersuasive. As Chief Judge Kasold explained, "[t]he Board renders the final decision for the Secretary on all questions in matters affecting the provision of benefits, subject only to the statutes governing such benefits and related judicial rulings, as well as VA regulations, instructions of the Secretary, or VA General Counsel opinions." *Hudgens*, 26 Vet. App. at 566 (Kasold, C.J., dissenting) (citing 38 U.S.C. § 7104(c)).

If the Secretary is dissatisfied with the Board's interpretation of a regulation, the Secretary may instruct the

Board regarding what the Secretary believes is the correct interpretation, and such instructions are binding on the Board. 38 U.S.C. § 7104(c) ("The Board shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department."). As further indication of the weight accorded to Board interpretations of VA regulations, the Veterans Court has previously looked to Board decisions in assessing the Secretary's interpretation. *See, e.g.*, *Fountain v. McDonald*, 27 Vet. App. 258, 270–71 (2015) (stating that prior Board interpretations "provide[] information about the application of the Secretary's position" and accepting the Board's interpretation that tinnitus is an organic disease of the nervous system). Despite the Veterans Court's stated practice of looking to prior Board decisions for guidance, here the Veterans Court seems to have disregarded the fact that the vast majority of Board decisions favor Mr. Hudgens's view of DC 5055. Because "the agency's interpretation conflicts with a prior [agency] interpretation," it would be inappropriate to afford *Auer* deference here. *Christopher*, 132 S. Ct. at 2166.

Second, we cannot ignore that, during the pendency of this appeal, the agency found the need to clarify the language of a regulation that it now argues has always been clear on its face. In these circumstances, it is difficult to avoid the conclusion that the regulation is sufficiently ambiguous to lead to conflicting rulings and that current agency interpretation of DC 5055 was conveniently adopted to support the Veterans Court's interpretation in this case. Such "*post hoc* rationalization" does not warrant deference under *Auer*, particularly when the agency's interpretation conflicts with the Veterans Court's prior decision in *Taylor*. *See Christopher*, 132 S. Ct. 2156

(finding "strong reasons for withholding the deference that *Auer* generally requires").[4] We accordingly decline to apply *Auer* deference to the VA's interpretation of DC 5055 in this case.

Mr. Hudgens argues that we are bound to apply the *Gardner* presumption to resolve any doubt in the interpretation of DC 5055 in his favor. Appellant Br. at 45 (citing *Gardner*, 513 U.S. at 118). In these circumstances, we agree.[5] "[E]ven if the government's asserted interpretation of [DC 5055] is plausible, it would be appropriate under *Brown* [*v. Gardner*] only if the statutory language unambiguously [supported the government's interpretation]." *Sursely v. Peake*, 551 F.3d 1351, 1357 (Fed. Cir. 2009). Here, we find that Mr. Hudgens's interpretation of DC 5055 is permitted by the text of the regulation. DC 5055 is under the heading "Prosthetic Implants" and

---

[4] We do not cite *Taylor* for its precedential effect—since it has none. We cite it to emphasize how many decision makers rejected the conclusion that DC 5055 unambiguously compels the reading given to it by the Veterans Court majority in this case.

[5] In many cases, the tension between *Auer* and *Gardner* is difficult to resolve, since both seemingly direct courts to resolve ambiguities in a VA regulation but would, in many cases, counsel contrary outcomes. Where, as here, however, there are firm grounds upon which to conclude that *Auer* deference does not apply, there is no need to resolve the tension between the two binding lines of authority or to question whether one should be abandoned in favor of the other. *See Johnson v. McDonald*, 762 F.3d 1362 (Fed. Cir. 2014) (O'Malley, J., concurring) (citing *Decker v. Northwest Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1339 (2013) (Roberts, C.J., concurring) (noting "there is some interest in reconsidering [*Auer*]")).

merely lists a schedule of ratings for the condition "Knee replacement (prosthesis)," without elaboration or limitation of the condition. *See* 38 C.F.R. § 4.71a, Diagnostic Code 5055. Mr. Hudgens's interpretation of DC 5055 is also consistent with the beneficence inherent in the veterans' benefits scheme and with the majority of Board decisions that have interpreted this regulation. Accordingly, we hold that Mr. Hudgens may be compensated under DC 5055 based on his partial knee replacement.

We therefore reverse the judgment of the Veterans Court holding that Mr. Hudgens is not entitled to an evaluation for his prosthetic knee replacement under DC 5055. In light of our decision, it is unnecessary for the Board to determine whether Mr. Hudgens's partial knee replacement can be rated by analogy to DC 5055. Our decision today leaves intact the judgment of the Veterans Court (1) vacating and remanding the Board's decision denying Mr. Hudgens a disability rating of greater than 10 percent for degenerative joint disease in the right knee; and (2) vacating and remanding the decision of the Board denying entitlement to a compensable disability rating for instability in the right knee for a prior time period.

## CONCLUSION

For the above reasons, we reverse the judgment of the Veterans Court on the issue of whether DC 5055 covers partial knee replacements, and we remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**