﻿Citation Nr: AXXXXXXXX
Decision Date: 12/17/18 Archive Date: 12/17/18

DOCKET NO. 180925-424
DATE: December 17, 2018
ORDER
An effective date of February 27, 2015 for a 100 percent evaluation for the Veteran’s service-connected posttraumatic stress disorder (PTSD) is granted.
A temporary total evaluation for the period from January 1, 2016 to September 28, 2016, based on a partial prosthetic replacement of the right knee joint is denied. 
Special monthly compensation (SMC) based on housebound status from January 1, 2016 to September 28, 2016 is denied. 
FINDINGS OF FACT
1. The Veteran submitted additional medical evidence in support of a higher initial rating for PTSD on April 17, 2015, within one year of the notification of a rating decision assigning a 70 percent rating for PTSD mailed on April 22, 2014. In the absence of a final rating decision on the initial rating for PTSD, the claim has remained pending.
2. The Veteran’s last day of full-time employment was February 26, 2015. 
3. Resolving all reasonable doubt in the Veteran’s favor, from the date he last left full-time employment in February 2015, his impairment from PTSD with anxiety more nearly approximates the criteria for total occupational and social impairment. 
4. The Veteran’s claim for a temporary total evaluation based on partial prosthetic replacement of the right knee joint was filed on September 25, 2015 based on a surgical procedure occurring in August 2015.
5. The regulation change defining “prosthetic replacement” as a total replacement of the named joint, as opposed to a partial replacement of the joint, became effective on July 16, 2015, before the surgical procedure and application for benefits in this case.
6. From January 1, 2016 to September 28, 2016 the Veteran did not have a single disability rated as 100 percent disabling, and additional service-connected disability or disabilities independently rated as 60 percent disabling, and was not permanently housebound. 
CONCLUSIONS OF LAW
1. The April 2014 rating decision that assigned the Veteran’s 70 percent rating for PTSD did not become final, and the claim for a higher initial rating for PTSD has remained pending. 38 U.S.C. § 7105 (2006); 38 C.F.R. §§ 3.156(b), 20.302, 20.1103 (2013). 
2. The criteria for an effective date of February 27, 2015 for a 100 percent evaluation for PTSD are met. 38 U.S.C. §§ 1155, 5107, 5110 (2012); 38 C.F.R. §§ 3.400, 4.15, 4.126 (2017).
3. The criteria for a temporary total evaluation for the period from January 1, 2016 to September 28, 2016, based on a partial prosthetic replacement of the right knee joint have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1-4.7, 4.10, 4.15, 4.30, 4.71a, Diagnostic Code 5055 (2017).
4. The criteria to establish SMC based on housebound status from January 1, 2016 to September 28, 2016 have not been met. 38 U.S.C. §§ 1114, 1502, 5107, 5110 (2012); 38 C.F.R. § 3.350 (2017)
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty in the United States Army from June 2001 to April 2013 with multiple tours of duty in Afghanistan and Iraq.
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
1. Entitlement to an effective date of February 27, 2015 for a 100 percent evaluation for PTSD is granted.
The effective date for an award of increased disability compensation is the earliest date it is factually ascertainable that an increase in disability occurred if a claim is received within 1 year from such date; otherwise, the benefit is effective as of the date of receipt of the claim. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(o)(2). 
The Veteran’s present effective date for the 100 percent rating for PTSD is February 2, 2017, the date of receipt for a claim of increased rating based on individual unemployability. The Veteran argues, however, that he has continuously prosecuted his initial PTSD claim such that the prior rating decisions in June 2013 and April 2014 did not become final. Notice of Disagreement, July 2017. The Board agrees that the claim for a higher initial rating remained pending. 
Generally, a rating decision that establishes a disability rating becomes final if a notice of disagreement with the assigned rating is not filed within one year of the date that notice of the decision is mailed. See 38 C.F.R. § 3.160(d) (2017). However, 38 C.F.R. § 3.156(b) includes an exception when evidence that is new and material to the claim is received prior to the expiration of the allowed one-year appeal period. Although this appeal is handled under the framework of the Appeals Modernization Act, a framework which eliminates the provisions of 3.156(b), the Veteran submitted the April 2015 evidence when this regulatory section remained applicable. As such, the Board finds that the April 2014 rating decision did not become final, based on the submission of new and material evidence within one year of notice of the rating decision, and the Veteran’s claim for a higher initial rating for PTSD has remained pending. In this context, the Board must now consider whether the evidence reflects that entitlement to a 100 percent rating for PTSD arose at any time before February 2, 2017 to establish an earlier effective date. 
A 100 percent rating for PTSD is established when there is total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance or minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 
Use of the term “such as” in these rating criteria indicates that the list of symptoms that follows is “non-exhaustive,” meaning that VA is not required to find the presence of all, most, or even some of the enumerated symptoms to assign a given rating. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013); see also Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). However, because all nonzero disability levels in the General Rating Formula for Mental Disorders are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that a veteran’s impairment must be due to those symptoms, “a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the symptoms associated with that percentage, or others of similar severity, frequency, and duration.” Vazquez-Claudio, 713 F.3d at 116-17. 
In other words, when evaluating a mental disorder, consideration shall be given to the frequency, severity, and duration of all psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during any periods of remission. The evaluation will be based on all the evidence of record that bears on occupational and social impairment rather than solely on an examiner’s assessment of the level of disability at the moment of the examination. It is the responsibility of any reviewing authority to interpret examination reports considering the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. §§ 4.2, 4.126. 
A March 2014 VA examination reported the Veteran had a history of marital problems with his spouse, twice before retaining an attorney with a plan to divorce, and engaging in marital counseling, although remaining married at the time of the examination. The Veteran reported that he and his wife constantly argued and he avoided family outings. The Veteran also reported not having any friends. He explained that he had problems at work due to his mind wandering. The Veteran described his mental or emotional state as “Not well.” He described feeling nervous or anxious continuously, about 95 percent of the time, experiencing panic attacks approximately 3 times per week without provocation. When asked about hallucinations, the Veteran described seeing friends who had passed away. The Veteran described often checking locks, but the examiner found no other history to suggest obsessions, compulsions, phobias, rituals, checking or hoarding behaviors. The Veteran denied any history of suicidal or homicidal ideation or other self-destructive behavior. 
The examiner identified symptoms of depressed mood, anxiety, suspiciousness, panic attacks more than once a week, near-continuous panic or depression affecting the ability to function independently, appropriately and effectively, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, inability to establish and maintain effective relationships and obsessional rituals which interfere with routine activities. 
The Board finds that a 100 percent rating for PTSD is not warranted as of March 2014, as at that time the Veteran is still employed full time. Additionally, the Veteran does not demonstrate gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance or minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation, or own name, or symptoms of equivalent severity, frequency, or duration. See VA examination, March 2014. 
At the time of a private neuropsychological evaluation occurring between February and April 2015, the Veteran was described as experiencing moderate depression and anxiety with frequent irritability, trouble concentrating, persistent feelings of sadness, guilt or worthlessness, difficulty remembering and sleep problems, as well as feeling terrified, agitated, nervous, and having PTSD symptoms of social avoidance, nightmares, tiredness, and excessive scanning of his surroundings. Occupational deficits included severely impaired visual memory; moderately impaired processing speed; moderate deficits in sustained attention and working memory; moderately impaired complex motor planning speed; moderately impaired executive functions that require planning, organizing and completing tasks in a timely manner; moderate depression; moderate anxiety and persistent cognitive impairments. Disability Benefits Questionnaires signed by a private psychologist in both April 2015 and January 2017 then identified “total occupational and social impairment” stating that the Veteran had PTSD, depression and neurocognitive disorders with overlapping symptoms. 
After considering the entirety of the record, the Board finds the evidence persuasive that the level of severity of the Veteran’s impairment from PTSD and anxiety more nearly approximates the criteria for a 100 percent rating based on total occupational and social impairment as of February 27, 2015. This is the first date that he was no longer employed full time, and as such is the earliest possible effective date for a 100 percent rating based on total occupational and social impairment. On a VA Form 21-8940 the Veteran submitted as his February 2017 claim, he identified his last day of full-time employment as February 26, 2015 and states that this is the date that he became too disabled to work. The Board will resolve reasonable doubt in the Veteran’s favor and find that the first day that the Veteran was no longer employed is the earliest possible effective date at which the Veteran is entitled to a 100 percent rating for PTSD based on total occupational and social impairment. As of this date, the Board finds that his symptoms of PTSD more nearly approximate the criteria for a 100 percent rating. 
An effective date earlier than February 27, 2015 is not warranted as the Veteran did not exhibit symptoms consistent with the nature, severity, and duration of those contemplated by a 100 percent rating under the General Rating Formula for Mental Disorders in 38 C.F.R. § 4.130 and was still employed full-time, functioning well, and reported performing his work duties without warnings, write-ups or complaints from supervisors. VA examination, March 2014. Thus, prior to leaving full-time employment, the Veteran was not shown to be totally occupationally and socially impaired.
In sum, an earlier effective date of February 27, 2015 is the earliest possible date warranted for an increase to 100 percent disability rating for PTSD as such a rating requires severity of symptoms consistent with total occupational and social impairment. 38 C.F.R. § 3.400. Reasonable doubt is resolved in the Veteran’s favor as symptoms more nearly approximating this level of severity are found as of the date the Veteran last left full-time employment. An effective date of February 27, 2015 is warranted. The appeal is granted. 
2. Entitlement to a temporary total evaluation for the period from January 1, 2016 to September 28, 2016, based on a partial prosthetic replacement of the right knee joint, is denied.
Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity resulting from service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. All potentially applicable rating criteria and regulations must be considered. 
If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 4.3. Staged ratings must be considered, which are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the appeal.
In this case the Veteran seeks a temporary 100 percent rating for his service-connected right knee disability, based on partial knee replacement, for a 13-month period from the August 26, 2015 date of surgery through October 1, 2016 under Diagnostic Code 5055 which allows a 100 percent rating for 1 year following implantation of prosthesis in a prosthetic replacement of the knee joint. 
This Veteran’s existing disability ratings already include a temporary 100 percent rating for the right knee from August 26, 2015 to January 1, 2016, and from September 28, 2016 to November 1, 2017. Thus, the Board considers whether a temporary total rating is warranted in the interim between these existing temporary totals previously granted following two right knee surgical procedures. In other words, the relevant interim period where there is not already a temporary total rating for the right knee is from January 1, 2016 to September 28, 2016. 
The Veteran asserts that he is entitled to this total rating for 1 year following his partial knee replacement surgery in August 2015 based upon the holding of the United States Court of Appeals for the Federal Circuit in Hudgens v. McDonald, 823 F.3d 630 (Fed. Cir. 2016). In this case, the Federal Circuit held that provisions of Diagnostic Code 5055 regarding prosthetic knee replacements were applicable to partial knee replacements, rather than only applicable to total knee replacements as the Court of Appeals for Veterans Claims had previously held in Hudgens v. Gibson, 26 Vet. App. 558, 561 (2014). 
However, in the period between the Court of Appeals for Veterans Claims decision and the Federal Circuit’s decision in this matter, the Secretary of Veterans Affairs published a final rule in the Federal Register stating that effective July 16, 2015, Diagnostic Codes 5051 through 5056 regarding prosthetic implants of various joints applies to total replacement of the named joint only. 38 C.F.R. § 4.71a, Note following Diagnostic Code 5051-5056 (2017); 80 Federal Register 42040 (July 26, 2015). 
This Veteran’s appeal for a temporary 100 percent rating is based upon partial replacement of the right knee joint. He does not contend that the surgery occurring in August 2015 was a total replacement of the knee joint, nor does the medical evidence reflect this. See, e.g., Correspondence from Attorney, October 2016; Private treatment record, September 2016 (describing August 2015 procedure as involving patellofemoral knee replacement rather than total knee replacement).
Moreover, the Veteran’s claim for a rating under DC 5055 was not pending at the time the regulation change became effective on July 16, 2015. Indeed, the surgery in question did not take place until the following month in August 2015 and the present claim for an increased rating due to this surgery was received on September 25, 2015. As such, application of the revised interpretation of “prosthetic replacement” in Diagnostic Code 5055 as meaning a total replacement of the knee joint is appropriate as this regulation was in effect prior to the filing of the present claim.
Accordingly, as the Veteran did not undergo a total right knee replacement in August 2015, he is not entitled to a 100 percent rating for 1 year following the implantation of the partial prosthesis under Diagnostic Code 5055. In a case such as this one, where the law and not the evidence is dispositive, the claim must be denied based on the absence of legal merit or the lack of entitlement under operation of law. See Sabonis v. Brown, 6 Vet. App. 426 (1994) citing Fed.R.Civ.P. 12(b)(6) (“failure to state a claim upon which relief can be granted”).
3. Entitlement to SMC based on housebound status from January 1, 2016 to September 28, 2016 is denied. 
The Veteran seeks Special Monthly Compensation on a statutory housebound basis of having a single service-connected disability rated as 100 percent disabling, plus additional service-connected disability or disabilities independently ratable at 60 percent for the “entire period of temporary 100% evaluation for right knee joint replacement.” Notice of Disagreement, August 2016; see also 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i). 
The Veteran’s attorney has acknowledged that this claim of entitlement to SMC is contingent on the grant of a temporary total rating for the Veteran’s partial right knee replacement for this period. VA Form 9, November 2017. The Board has explained why the temporary total rating based on the Veteran’s partial knee replacement cannot be granted for the period in question. As that claim has been denied, and even considering the earlier effective date of a total disability rating for PTSD granted herein, the Veteran does not have a single service-connected disability rated as 100 percent disabling, plus additional disability rated as 60 percent disabling during the period from January 2016 to September 2016. 
Additionally, beyond the statutory housebound provision above, the Veteran has not argued that he was permanently housebound or substantially confined to his home during the period from January 1, 2016 to September 28, 2016 as a direct result of service-connected disabilities with a reasonable certainty that any such confinement would continue throughout his lifetime. In contrast, a May 2016 VA social work case management note stated the Veteran had been keeping his appointments and navigating the VA system without problem. The Veteran was referred to various community resources for his needs, and removed from the case management call-back list without concern. The Board does not find this to be consistent with a permanently housebound Veteran, nor does the Veteran or his attorney present such an argument. 
(Continued on the next page)
 
Overall, entitlement to SMC under the provisions of 38 U.S.C. § 1114(s) for total disability plus 60 percent, or housebound status from January 1, 2016 to September 28, 2016 is not warranted. 38 C.F.R. § 3.350(i).
 
K. J. ALIBRANDO
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD K. McDonald