# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4601

JAMES R. WELCOME, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 14, 2020                                    Decided October 29, 2020)

*Jennifer A. Zajac*, of Oceanside, California, with whom *Linda E. Blauhut*, of Washington, D.C., was on the brief, for the appellant.

*Mark D. Gore*, with whom *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*: The Veterans Retraining Assistance Program (VRAP) was a "short-lived program intended to provide older veterans with job retraining for various high-demand occupations." *Lacey v. Wilkie*, 32 Vet.App. 71, 73 (2019). By statute, Congress terminated VA's authority to issue payments under the program as of March 31, 2014. As that date approached, VA decided to issue accelerated, lump-sum benefit payments to veterans who had remaining eligibility and who were still enrolled on a full-time basis—but only in an amount that would carry veterans to the end of their current term or June 30, 2014, whichever came earlier.

James R. Welcome was one of these veterans. Despite having more than 10 months of remaining eligibility as of March 31, 2014, VA calculated his lump-sum benefit payment until the end of his term—May 30, 2014. He thus received only 2 of his remaining 10 months of benefits.

The question in this case is whether VA's decision to limit Mr. Welcome's benefits to the end of his term constituted a reasonable interpretation of the statute. We agree with Mr. Welcome that there was no statutory basis for such action; to the contrary, VRAP assistance was expressly tied to the veteran's program of education, and his payment should have corresponded to the full extent of his eligibility. The matter is remanded for the Board to reconsider the veteran's

entitlement to additional benefits based on the nature and extent of his educational program, his enrollment status in that program after March 31, 2014, and any other statutorily relevant factors.

## I. BACKGROUND

VRAP provided "training to veterans aged 35 to 60, who were unemployed but not otherwise eligible for TDIU or VA education benefits, and who were not enrolled in other state or federal job training programs at the time of application." *Lacey,* 32 Vet.App at 73. Participants were "entitled to up to 12 months of retraining assistance," which could "only be used . . . to pursue a program of education (as such term is defined in section 3452(b) of title 38, United States Code) for training, on a full-time basis." VOW to Hire Heroes Act of 2011, Pub. L. No. 112–56, § 211(b), 125 Stat. 711, 713.

In August 2013, Mr. Welcome applied for this assistance so that he could pursue a marine service technology program and receive a certificate in Boatmotor Maintenance and Service. R. at 1614. VA certified his eligibility and told him that he was entitled to 12 months of benefits. R. at 1632. Because the course was full at the time, however, Mr. Welcome had to wait until February 10, 2014, to begin the program.

With its payment authority set to expire on March 31, 2014, VA decided to issue accelerated, lump-sum payments to cover benefits for veterans who remained enrolled in educational programs past that date.[1] Mr. Welcome received one of these payments. Additionally, he received a notice from VA informing him that his accelerated benefits were calculated to cover a limited period that terminated at the *earliest* of four alternate dates:

- The end date of the term, quarter, or semester in which he was enrolled as of March 31, 2014;

- The date his enrollment dropped below full time;

---

[1] As the Secretary explained during oral argument, VA interpreted the payment restriction narrowly, concluding that it could continue to provide benefits for program periods beyond March 31, 2014, so long as payments were made prior to that date. *See* Oral Argument, https://www.youtube.com/watch?v=U9l8VkQez60&t=2522s, at 40:15-41:23. Mr. Welcome doesn't contest this reading, and we see no need to question it.

We also note that the Agency's decision was widely circulated. *See* Email Bulletin from Curtis L. Coy, Deputy Under Sec'y for Econ. Opportunity, Veterans Benefits Admin., U.S. Dep't of Veterans Affairs, to Colleagues and Fellow Veterans (Mar. 14, 2014, 08:36 EDT) (on file at https://content.govdelivery.com/accounts/USVAVBA/-bulletins/aaeb4c); Letter from Curtis L. Coy, Deputy Under Sec'y for Econ. Opportunity, Veterans Benefits Admin., U.S. Dep't of Veterans Affairs, to School Certifying Officials (Mar. 5, 2014) (on file at http://www.benefits.va.gov/-gibill/docs/letters/vrap_letter_to_schools.pdf).

- ▪ June 30, 2014; or
- ▪ The date on which he exhausted his 12 months of entitlement under VRAP.

R. at 1640.

Ultimately, VA paid Mr. Welcome benefits to the end of his term, which was May 30, 2014. He consequently received benefits for only 2 months of his remaining 10 months and 9 days of eligibility.

Mr. Welcome challenged that decision before the Board, arguing that he was entitled to the full 12 months of benefits. If he could be paid in advance for 2 months, he asked, why could he not be paid for the entire 10 months and 9 days of his remaining eligibility?

In a succinct August 2018 decision, the Board never acknowledged that VA issued Mr. Welcome a lump sum payment for his enrollment period after March 2014, but merely noted that the law did not provide for any extension of VRAP benefits as there was simply "no legal basis to find him eligible for VRAP payments beyond March 31, 2014." R. at 5. In so ruling, the Board neither discussed nor provided any rationale for how VA arrived at the four "earliest of" alternatives upon which it based its payment obligations to Mr. Welcome.

Mr. Welcome appealed to this Court.

## II. ANALYSIS

We analyze whether VA's decision to limit Mr. Welcome's benefits to the end of the term constituted a reasonable interpretation of VRAP's statute—or, whether the statute required VA to award a sum that corresponded to the full extent of his eligibility. We evaluate challenges to an agency's interpretation of a statute that it administers via the two-step framework outlined in *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). At step one, we ask whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter as the Court "must give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43. If the statutory language is "silent or ambiguous," however, we proceed to step two and ask whether the agency's action is based on a "permissible construction of the statute." *Id.* at 843. If the agency's interpretation is based on a permissible construction, then the Court defers to it; if it is not, then the action is "arbitrary, capricious, or manifestly contrary to the statute" and thus unlawful. *Id*. at 844; *Balestra v. United States*, 803 F.3d 1363, 1368 (Fed. Cir. 2015).

We review de novo questions of statutory interpretation. *Philbrook v. Wilkie*, 32 Vet.App. 342, 346 (2020). Our "'proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. Where, as here, that examination yields a clear answer, judges must stop.'" *Genentech, Inc. v. Immunex R.I. Corp.*, 964 F.3d 1109, 1111 (Fed. Cir. 2020) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019)).

A. Step One – Congress Was Clear

The text of the statute makes clear that VA was required to pay eligible veterans the full extent of their benefits. We noted in *Lacey* that Congress designed VRAP to be "limited in duration and scope." 32 Vet.App. at 74. Commencing on July 1, 2012, VRAP contained a sunset provision limiting the Secretary's authority to make payments on March 31, 2014. § 211(a), (k), 125 Stat. at 713–15. Specifically, subsection (k) of section 211 read: "TERMINATION OF AUTHORITY— The authority to make payments under this section shall terminate on March 31, 2014." *Id.* at 715.

But while the statute ended the Secretary's ability to make payments, it did not contain any language requiring veterans to use their benefits by a certain date. Instead, the statutory text reveals other "discrete, if implied, limitations." *Lacey*, 32 Vet.App. at 79. We know, for example, that benefits could only issue to veterans pursuing a program on a "full-time basis." § 211(b), 125 Stat. at 713. We also know that VA could only provide "up to 12 months of retraining assistance." *Id.* Thus, there is a clear statutory basis for VA limiting a lump sum payment to a veteran who had dropped below full-time status or whose program of education was completed in fewer than 12 months.

The statute, however, contains no language directing VA to curtail or otherwise reduce a veteran's benefits, and nothing in the text or structure suggests that Congress intended to cut benefits at the end of a veteran's term or June 30, 2014, whichever came earlier. The law does not tie the veteran's benefits to a current term of enrollment or to any specific date. On the contrary, it expressly tethers benefits to the program of education, such that participants are "entitled to up to 12 months of retraining assistance" "to pursue a program of education . . . for training, on a full-time basis in a program approved under Chapter 36, offered by a community college or technical school, leading to an associate degree or a certificate in a high demand occupation." *Id.* On its own terms, the statute contains only these limitations to the 12-month term of benefits.

Congress's use of mandatory language is significant, noting that "each veteran who participates in the program . . . *shall* be entitled to up to 12 months of retraining assistance provided

4

by the Secretary of Veteran's Affairs." *Id.* (emphasis added). In fact, were it not for the inclusion of the phrase "up to 12 months," there could be no ambiguity as to the length of benefits to which a participant was entitled. But even with the inclusion of the "up to" phrase, there is nothing in the statutory language to suggest that the actual length of a veteran's entitlement is subject to a discretionary decision on the part of the Secretary. On the contrary, the statutory language strongly indicates that the "up to 12 months" phrase is designed to allow a measure of flexibility in the period of entitlement to match the expansive variety of programs of education a veteran can undertake—many of which may be capable of completion in fewer than 12 months. Stated differently, the "up to 12 months" language establishes that a veteran who completes a program of education in fewer than 12 months does not retain eligibility to any remaining benefits.

The statutory language thus indicates that the period of entitlement would be determined, not by the discretion of the Secretary, but by the duration and nature of the program of education a veteran pursued on a full-time basis. Section 3452(b) defines "program of education" broadly to cover a variety of program types. *Lacey*, 32 Vet.App. at 76. At its broadest, the definition reaches "any curriculum or any combination of unit course or subjects . . . generally accepted as necessary to fulfill requirements for the attainment of a predetermined and identified educational, professional, or vocational objective." 38 U.S.C. § 3452(b). And in a narrower sense, it can include programs with more than one objective "reasonably related to a single career," coursework required "as a condition to obtaining financial assistance under . . . the Small Business Act," or various tests for licenses, credentials, or admittance to higher education. *Id*.

Throughout this "expansive definition," *Lacey*, 32 Vet.App. at 79, a common denominator emerges among the authorized program types: the full "attainment of a[n] . . . objective," § 3452(b). There is a sense of completeness; that a "program of education" is the sum of its parts, not an individual component or term.

Definitions set out by statute are to be carefully followed. *Burgess v. United States*, 553 U.S. 124, 129 (2008) ("Statutory definitions control the meaning of statutory words . . . in the usual case." (quotation marks omitted)). It carries significant weight that Congress expressly linked VRAP benefits to the "program of education" chosen by the veteran, rather than smaller units such as individual classes, terms, semesters, or other components. Further, the few limiting factors in the statute were clearly articulated, such as the October 1, 2013, application deadline; the 12-month cap on benefits; and the requirement that the veteran maintain full-time enrollment in a program

approved under Chapter 36, leading to an associate degree or certificate in a high demand occupation.

In whole, the statute lacks any indication that Congress intended to allow VA discretion to grant a smaller allotment of benefits based on limitations other than those expressly listed. Instead, we read it as signaling a clear intent from Congress requiring VA to pay eligible veterans the full extent of the benefits provided for under the statute. Thus, once the Secretary chose to administer lump-sum payments to help veterans toward their objectives, he had an obligation to provide benefits in a manner consistent with the statutory criteria, subject only to the express limitations in the statute.

## B. Step Two – VA's Interpretation

Nonetheless, even if we were to regard VRAP as ambiguous as to whether Congress delegated to VA authority to limit benefits—for reasons other than those listed in the statute—to a period less than the full 12-months of eligibility, VA's proposal of the four alternative "earliest of" dates does not constitute a permissible interpretation of the statute. For this reason, VA's position does not warrant deference.[2]

We find nothing in the statute to support the Secretary's main argument, namely that the hard stop of June 30 was justified because Congress requested a report on VRAP's achievement of target objectives by July 1, 2014. *See* § 211(i)(1), 125 Stat. at 714–15. The Secretary contends that the report could *only* accurately reflect the number of veterans assisted through the program if there were no longer any veterans active in the program itself. It's true that, without the June 30 cutoff, veterans might still have been in the program as of July 1; but there is no reason to prevent the Secretary from tallying numbers long before July 2014 where the last veteran applied for assistance on October 1, 2013, and the last VRAP payment issued on March 31, 2014. By its own terms, the report served merely to indicate the total number of participants, degrees awarded, and "data related to the employment status" of the participants. § 211(i)(2)(B), 125 Stat. at 715. Although Congress wanted to know by July how many veterans participated, earned a degree, and gained employment, that request doesn't signal a congressional preference for data over veterans

---

[2] Because VA's interpretation was not reasonable in substance, we do not consider whether VA's publication of a bulletin to explain how it interpreted its obligations under § 211(k) satisfied what's become known as "Step Zero"—the threshold requirement that an agency interpretation be of the sort that warrants *Chevron* analysis in the first instance. *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

with remaining entitlement. The reporting requirement thus proves a slim reed to support an inference that Congress wanted veterans who were still engaged in an educational program to quit or otherwise continue alone without assistance.

Instead, the statute's eligibility criteria reflect that VRAP was designed to provide educational benefits for older, unemployed veterans, who were not entitled to receive any other educational assistance, and who were not enrolled in a federal or state job training program. § 211(e)(1)(A-F), 125 Stat. at 713-14. To discontinue benefits for these veterans before the end of the education program designed to provide them with the training and credentials to obtain employment in high-demand occupations, simply to provide Congress with a report, runs counter to the objectives of what here is clearly a remedial statute. *See Smith v. Brown*, 35 F.3d 1516, 1525 (Fed. Cir. 1996), *superseded on other grounds by statute*, 38 U.S.C. § 7111.

As a secondary basis, the Secretary also suggests that his decision to implement the end-of-term option was informed by chapter 30, which administers the Montgomery G.I. Bill program. He considers that context analogous and thus instructive because a specific provision under that chapter, 38 U.S.C. § 3014A(c)(2), authorizes accelerated payments to a narrow subset of beneficiaries but limits those payments to the end of the veteran's current term.

But section 3014A has less in common with the VRAP program than this argument suggests. That statute addresses chapter 30 beneficiaries "enrolled in an approved program of education that leads to employment in a high technology occupation in a high technology industry" and who are charged tuition and fees at a rate more than double what VA's "basic educational assistance allowance" covers. 38 U.S.C. § 3014A(b). The unique context—high-priced, tech-specific degrees—is enough to strain the analogy. But more than that, in permitting lump sum payments, section 3014A does not limit the amount of benefits that veterans were otherwise entitled to. The law merely requires VA to break up accelerated payments by term instead of issuing a single payment for the entire program. *See, e.g.*, 38 U.S.C. § 3014A(e)(1) (referring to "each accelerated payment of basic educational assistance made to an individual under this section" and thus contemplating multiple accelerated payments).

What the Secretary did here was different. He issued a lump sum payment that delivered only a fraction of the benefits for which Mr. Welcome was eligible, a decision divorced from any statutory authority.

Finally, the fact that the Board did not cite either of these purported justifications in its decision suggests that they serve as mere justifications for a litigation position rather than the reasoned interpretation of a statute by an agency for the purpose of carrying out the authority delegated to it.

## C. The Board Decision

Because the Secretary's interpretation of VRAP was unreasonable, we would find error in the Board decision even if it had adopted the position spelled out by the Secretary. Nonetheless, the Board's actual justification—that VA's decision to limit benefits to the four "earliest of dates" was justified because veterans had no right to benefits after March 31, 2014—stands in direct conflict to the policy adopted by VA in making payments to cover benefits extending beyond that date. For this reason, it cannot be upheld. *See Hudgens v. McDonald*, 823 F.3d 630, 638 (Fed. Cir. 2016).

Additionally, because the Board decided (incorrectly) that the law categorically precluded the benefits sought, it did not make factual findings concerning the nature of Mr. Welcome's course of study and his enrollment status after March 31, 2014. These questions bear directly on his continued eligibility for the periods for which he seeks payment and thus must be resolved by the Board on remand. We cannot make these factual findings in the first instance. *See Webb v. Wilkie*, 32 Vet.App. 309, 315 (2020).

## III. CONCLUSION

Accordingly, the August 2, 2018, Board decision is VACATED and the matter is REMANDED for further proceedings consistent with this decision.